Mr. Hungard, you may proceed. Thank you, Justice Scalia, and may it please the Court. The Federal Circuit's clear and convincing evidence standard ensures the enforcement of invalid patents, even though this Court recognized in KSR that invalid patents stifle scrutiny rather than promote the progress of liberal arts. Under this Court's decisions in Grogan and Huddleston, the default preponderance standard should govern in all cases because Section 282 does not specify a heightened standard of proof. And as this Court suggested in KSR, it makes no sense to have a heightened standard of proof when the relevant prior art evidence was never even considered by PTO. Under any view, it was error to require clear and convincing proof of invalidity in this case. Pretty hard to argue, Mr. Hungard, that it makes no sense when it made sense to Cardozo and Judge Ritsch. Your Honor, Justice Cardozo was not addressing a case in which the evidence at issue had not been considered by the Patent Office. To the contrary, the Court made clear. Well, you can't keep shifting horses now. Are you going to argue for all the time, in which case you can appeal to the general rule that we always apply, or are you going to say, oh, yes, we won't apply it normally, but only when the prior art hadn't been considered? I mean, you can't ride both horses. They're going in different directions. Your Honor, our position and our view of the correct interpretation of the statute is the Grogan and Huddleston approach. The statute does not specify a heightened standard. Therefore, preponderance, the default standard, applies. I was attempting to answer Justice Ginsburg's question about the RCA case, and the RCA case didn't address the question that was discussed in KSR. But we believe, as I said, that the preponderance standard should govern across the board.  So you're contradicting Cardozo? To the extent that Justice Cardozo was discussing a heightened standard in the limited context of priority inventions, we think that that's not consistent with Section 282, which of course came later. Moreover, I would note that the concerns that undergirded the Court's heightened standard in priority of invention cases were that those concerns were addressed to the problem of primarily oral testimony being offered to substantiate priority of invention claims. The Federal Circuit has separately addressed that issue by means of its corroboration requirement, which operates separate and independent of the clear and convincing evidence standard. So the concerns that undergirded RCA are completely taken care of by that as well. But Justice Cardozo certainly didn't limit his holding in the way you suggest. The language of that opinion is extremely broad. And if you read that opinion, no one would gather from that opinion the kinds of limits that you're suggesting on it. Actually, Your Honor, I agree that there is some grand language used in dictum in that case. Certainly the holding doesn't extend beyond what was presented before the Court. But actually, if you read the language carefully, you'll see again and again he refers to the fact that it's a question of prior invention. He says, when the defense is a prior invention, and then he quotes the heightened standard on page 7. Again, on page 8, he talks about the defense of invention by another. So he at every single one of the cases that he cites there without exception in that discussion on pages 7 to 8 is a priority of invention case, the barbed wire patent case being the leading example, which had explained this rationale for a heightened concern in that specific context. But you don't have cases applying, Supreme Court cases applying the heightened standard in other contexts. And indeed, you have many cases decided after RCA that don't mention any heightened standard in viewing invalidity questions. Ginsburg. But taking RCA itself, Cardozo said, through all the verbal variances, there runs this common flaw of thought and truth, that one otherwise an infringer who assails the validity of a patent, there upon its face bears a heavy burden of persuasion and fails, unless his evidence has more than a dubious preponderance. Yes, Your Honor. And Red, taken out of context, that could have broad implications. But the sentences before and after clearly indicate that he's talking about priority of invention. He talks about the title of the true inventor and so forth. So again, that's what those cases said, and that's what a fair reading of RCA says. But regardless of the best reading of RCA, the question here is what did Congress do in 1952? And we know that Congress in 1952 could not possibly have understood the law to be an across-the-board, clear and convincing evidence standard. Then you have to be saying that Judge Ritch got it wrong, because he does deal with the legitimacy. Well, certainly, yes, Your Honor, certainly we think American Hoist is wrong, although I would note that Judge Ritch in his American Hoist decision says that the cases prior to 1952 were all over the map. But the relevant question is what would Congress have thought the state of the law was in 1952 if you think that there's any merit at all to the judicial codification argument. It's perfectly clear that Congress could not have thought in 1952 that the law was an across-the-board heightened standard, because case after case after case rejected the proposition that there is a heightened standard or that the presumption was unaffected when the evidence was not considered by the Patent Office. We've cited numerous cases in our brief at pages 34 through 36, and we also in the reply brief at footnote 3 reference a list of over 200 cases, some from before 1952 and some from after 1952, all recognizing that the presumption of validity was weakened or eliminated when the prior art evidence was not considered by the Patent Office. Kagan Well, Mr. Hunger, it seems to me that RCA would matter, even under your view of the world, because if you think that Congress did not codify the existing state of law as to the standard of proof, and you think that Congress, that section 282 was essentially silent as to the standard of proof, then the question is what do we do? And one answer to that question is we go with our prior precedent, which is RCA. Hunger Well, first of all, again, because RCA in context was a case where there was a priority of invention dispute that had been adjudicated in the Patent Office on the same evidence, previously resolved by the Court a priority of invention dispute where the heightened standard cases had some application, it clearly wouldn't affect the standard in this case. It's a clear rule to be codified. The default rules of statutory construction apply. The default rule of statutory construction on this question is Grogan and Huddleston. The preponderance standard applies. And, moreover, while the statute does not specify a heightened standard, it does actually speak to and preclude the argument that I4I makes, because the first sentence refers to patents being presumed valid under this Court's precedence, a presumption shifts the burden of going forward. And the second sentence of the original statute refers to the burden of proof. Under their interpretation, presumption does all the work. The first sentence not only shifts the burden of going forward, also shifts the burden of proof, and does so under a heightened standard, which has never been how presumption is interpreted generally in the law, and it renders the second sentence entirely superfluous. There's no need for it. Ginsburg It is true that the Federal Circuit has been consistent now since almost the beginning, since that Court came on the scene, and it does have a monopoly on appeal in patent cases. It's 1984. Because the Federal Circuit has consistently taken this position, one would have expected that there would have been bills proposed to change it, were there any? No, Your Honor, not that I'm aware of. But I would note that this is, I think, I4I's congressional acquiescence argument, if you will. And that argument fails for numerous reasons. First of all, if there could be any acquiescence, and we don't think that this Court's extremely high requirements for such a claim have been satisfied here, but if there could be any acquiescence at all, the first 30 years after enactment of the statute would be the most relevant consideration in determining what Congress had acquiesced in. And it's perfectly clear that the regional circuits all rejected the across-the-board heightened standard that I4I is arguing for. So if Congress acquiesced in anything, it was not an across-the-board heightened standard. Sotomayor Counsel, I, having read some of those cases that you cited that you claim weakened or eliminated the burden-approved standard, most of them didn't quite eliminate it. Virtually all of them added an instruction to the jury of some sort that said that the application of the standard should take into account the fact that the PTO did not consider evidence, did not consider the prior art relied upon in the validity challenge. You didn't ask for such an instruction in this case. Is that correct? And if you didn't, why isn't that adequate to convey the point that you're trying to convey, that a jury should in fact consider that the PTO never got to see that prior art? Maddrey Your Honor, if I understand the question correctly, first of all, I would disagree with the characterization of the cases, but with respect to the preservation issue, we objected to the clear and convincing evidence instruction. And we also said that if any instruction on the heightened standard is going to be given, it needs to reflect that the fact that, at least with respect to prior art combinations that were not considered by the Patent Office, the standard should be a preponderance. And indeed, that's true of all of the prior art combinations that were at issue in this case. Sotomayor But other judges give a slightly different standard. They give a clear and convincing standard and they add a separate instruction that tells the jury, in applying that standard, you should consider the fact that the PTO did not see this evidence. You didn't ask for that.  We didn't ask for that. Sotomayor You just asked for the preponderance of the evidence charge. Maddrey But, Your Honor, we did object to the clear and convincing evidence instruction. And so if we don't think that's the right answer, the more easily satisfied instruction, if that's what Your Honor is referring to, but if that were the Court's requires, then our objection to the clear and the unmodified clear and convincing evidence instruction would justify a new trial here. But more fundamentally, even the Federal Circuit had because that, in effect Sotomayor I mean, you said to the judge below, all you have to charge is preponderance of the evidence. You never told him, please explain to the jury that under clear and convincing, they can take into account the fact that the PTO Maddrey But, Your Honor, that instruction would not solve the fundamental problem, which is that when the Patent Office didn't even consider the evidence, it makes absolutely no sense, as the KSR Court indicated, to have this heightened deference. The statute requires a degree of deference by shifting the burden of proof and the burden of going forward, but for I for I to say that we need to go beyond what the presumption is, the normal default standard of preponderance, you need some heightened reason for that. There's absolutely none, particularly when the Patent Office didn't consider the evidence, didn't make a decision, there was no decision and no evidence considered going to the relevant question. That's not I have one question here that I would like to get your view on. I'll assume that the language is open enough in the history so that we could make  I think it would be a change. I'm saying the reasons, as I get from the brief, for doing that are because there are two types of errors. It's a bad thing not to give protection to an invention that deserves it, and it is just as bad a thing to give protection to an invention that doesn't deserve it. Both can seriously harm the economy. And you're also saying that the Patent Office is out of control, not through its own fault, but there are too few people and too many inventions, and therefore type 2 error is a real risk. So I'm turning to you and saying, well, what should we do about it? I know your proposal, but why we've also seen in these briefs the following proposal. One, somebody who thinks there's a type 2 error, go back to the Patent Office and ask for reconsideration. That's pretty good. We get the experts to look at it again. And then that's coupled with tell the district judges to stick very closely to their job. Allow the clear and convincing standard to apply to facts, and by that we mean brute facts. And let them decide the brute facts, but let the judge decide whether that amounts to obviousness, novelty, or any of the other prerequisites. Now, I've gotten that out of the amicus briefs, some of which say they support you, but they really don't. And so I'd like your views on those two suggestions as being sufficient to cure the problem that you point to. First of all, with respect to reexam, reexam is not a solution to the problem or an answer to the absence of justification for a heightened standard for several reasons. First of all, reexam is limited in scope. It can only consider certain types of prior art evidence and issues. It couldn't, for example, it was not available for the issue that we're talking about here, the on sale bar. There are various other issues, the section 112 issues, such as written description and best mode and the like, are not susceptible of reexamination. Statutory subject matter is not susceptible of reexamination. Many kinds of prior art, anything other than actual patents or publications cannot be referenced in reexamination. So it's a limited mode of inquiry that does not address many types of prior art that come up in many types of important cases, technology cases in particular. So that's one reason why the reexam solution is not a problem. And of course, it can't possibly be used to infer some intent on the part of Congress. I4I and the government try to suggest that this was part of the scheme of Congress and this is why clearing and convincing makes sense. But reexam was enacted in 1980, long after the 52 Act, so it doesn't shed light on Congress's intent in enacting section 282. And it was enacted before the Federal Circuit had created its heightened standard. So it can't possibly have been an attempt to address the problems created by an across-the-board heightened standard that did not exist at the time in 1980. The law was clear that a preponderance standard governed in most or all cases, and a preponderance standard, of course, governs in reexam as well. So reexam is not a solution. The more easily satisfied instruction or that type of approach, if that's what I understand. Breyer, I'm getting that out of the American Intellectual Property Law Association. I don't blame them for my phrasing of it. But I — that is what struck the thought in my mind, that careful instruction is limiting the juries to brute facts and giving the judge the notion, the job of characterizing that. You heard what I said, that that will go a long way towards curing the problem you're worried about. Your Honor, I don't think it addresses the problem, because the fundamental problem is imposing this heightened standard on the jury that has no moorings in the statute and no moorings in common sense, particularly in a case like this one, where the relevant evidence was not only not considered by the Patent Office, but withheld from the Patent Office. Under those circumstances, to — It might not in your situation, but the problem is, in principle, as it's put to us, that the office and the Federal Circuit emerge giving protection to things that aren't really novel, that aren't really advances on the prior art, et cetera. Now, if that's the problem, and you carefully instruct the jury, the bad fake patents will go away, because the judge will say, look, this metal case called a battery leak proof is not really novel. But, Your Honor, if that were the case, the judge can't give an instruction like that. No, no. The judge says, I want you to find if this metal container is leak proof. Jury, yes. Now it's up to the judge. Your Honor, I think in many of these cases it would be extremely difficult or impossible for the judge to fashion at that level of specificity the factual issues that could be considered by the jury. But more fundamentally, if you're getting into that level of detail and addressing questions that the Patent Office didn't even consider or certainly did not have an idea of procedural advantages that litigation and discovery offer, it just makes no sense to impose a heightened standard. As one of Your Honor's earlier questions pointed out, the fundamental problem here is that the interests on the I4I side of the equation, the policy interests, are outweighed, if anything, by this Court's repeated recognition that invalid  Mr. Hungar, could we go back to the statute that was enacted in, what, 1952? Before that, the burden of proof on the issue of validity of the patent, that was on the challenger. So when Congress added a presumption of validity, it must have had in mind something more than that the defendant would have the burden of proof and the normal standard is preponderance. So by adding a presumption of validity, mustn't Congress have intended to do something more than simply repeat that the defendant has the burden of proof? No, Your Honor. The law actually before 1952 was quite unsettled on that question, as we noted in our brief and as Judge Ritsch, I believe, noted in the American Hoist case, there were actually prior cases prior to 1952 saying that the burden was on the patent holder to establish validity. So what Congress did was A burden of going forward or a burden of persuasion? I believe, you know, the cases aren't crystal clear on that. I think certainly they are talking about the burden of persuasion and presumably also the burden of going forward. But I don't think, I don't recall that they speak to that level of specificity. But certainly there are cases saying the burden is on the patent holder. Congress overturned those cases by imposing, by stating in the second sentence that the burden of proof would be on the defendant. But it only makes sense, as I indicated earlier, for Congress to have added that sentence if it didn't view the presumption sentence as shifting the burden of proof to the defendant, let alone shifting it under a heightened standard. So. Alito, if the challenger has the burden of persuasion, wouldn't it almost go without saying that the challenger would also have the burden of production on the issue of the, of invalidity? So what would be added then by, what role was played then by that sentence? A patent shall be presumed valid. I think that's unclear, Your Honor. Certainly there are circumstances in which the party with the ultimate burden of proof does not bear, does not have the burden of persuasion at every stage. And Congress, there were also cases prior to 1952 suggesting that the presumption had gone away, that there was no longer a presumption of validity or that the presumption went the other way. And so, again, Congress wanted to be clear. It was saying there is a presumption which shifts the burden of going forward under this Court's precedence, and there is a burden of proof on the defendant, and that's all it did. To infer that it did something much more, much more than the pre-1952 cases authorized with it, there are literally dozens of pre-1952 cases cited in that list of 200 cases referenced at footnote 3 of our brief, from prior to 1952 rejecting the notion that there's an across-the-board heightened presumption of validity, saying, no, if the evidence was not considered by the Patent Office or in some of the Western Auto case, for instance, from the Sixth Circuit, says, well, there's this exception for oral testimony of prior invention, that's the RCA case, but everything else is preponderance or there's no heightened presumption of validity in any other circumstances. So I think the law was clear, and the treatises we cite at page 9 of our reply brief also make clear that the treatise writers understood. There was no across-the-board heightened presumption that it was weakened or eliminated when the evidence was not before the Patent Office. And some of the cases said that the case – actually, RCA itself cites with approval two court of appeals cases that we note in our reply brief, the Studi case and the Wilson case, which rejected the notion of a heightened standard across-the-board. They said, well, that's true when the issue was adjudicated before the Patent Office, but here, where the Patent Office didn't adjudicate the issue, that doesn't apply. So, again, you just can't get out of the pre-1952 case law the rule that I for I is urgent. If the Court has no further questions, I would like to reserve my time. Justice Scalia, and may it please the Court. Scalia, Mr. Waxman. The long-settled, clear and convincing evidence standard is correct, one, as a matter of statutory interpretation, two, as a matter of stare decisis in a field in which stability is particularly important, and three, as a matter of first principles. As to one, in 1952, Congress codified a long, uniform line of decisions from this Court holding that the presumption of validity imposes a heightened burden of proof, a burden of proof that this Court in RCA unanimously described as, quote, clear and convincing. And for the past 28 years, Congress has actively acquiesced in the Federal Circuit's consistent holding expressly drawn from RCA that the standard is clear and convincing.  Have you actively acquiesced? Scalia. Yeah, I like that notion of active acquiescence. I thought that might get a rise out of you. I hope I'll get a chance to go to first principles, but having made that provocative statement, the point is it's like passive activity, right? I may want to submit a supplemental brief on that. What I mean to say is that this is not a statute that Congress enacted and then forgot about. This is a statute in which, beginning in 1980, even before the Federal Circuit was created, Congress started amending the law to address the problem of low-quality patents with the first reexamination procedure in 1980, any number of amendments including to Section 282, the creation of interparties reexamination in 1999, and the current consideration of a post-grant review process. So Congress has been very, very active in this field, and what I mean by active acquiescence is it has been very active in this field, it is well aware of the clear and convincing evidence standard, and it has done nothing whatsoever to change it, even make any effort to consider making such a sweeping change in longstanding doctrine. If I could take you back to first principles, which is where you started, I have three problems in seeing your interpretation in the language of Section 282. First, the statute says, ''The burden of establishing invalidity of the patent, etc., etc., shall rest on the party asserting such invalidity.'' If Congress wanted to impose a clear and convincing burden, why in the world would they not have said that expressly in that sentence? Number two, if the first sentence, ''A patent shall be presumed valid'' means that it's talking about the burden, then it's superfluous, because that's dealt with in the second sentence. And third, the phrase ''shall be presumed valid'' doesn't seem to me at all to suggest clear and convincing evidence. A presumption normally doesn't have anything to do with clear and convincing evidence. Most presumptions can be disproved by much less than clear and convincing evidence. So how do you read that, your position into the language of the statute? Well, as to presumptions generally, I found particularly persuasive your opinion for the Third Circuit in GI Holding, but more. I've gotten a lot smarter since then. More directly to the point, and with all due deference to the sensibilities of the presiding justice for this argument, when Congress enacted Section 282 in 1952, the reviser's note, the House committee report, the Senate committee report said that they were, quote, ''codifying the existing presumption of patent validity.'' And this Court had unanimously said, and this is language from RCA that Microsoft does not address, on page 2 of its opinion, says, quote, ''Even for the purpose of a controversy with strangers, there is a presumption of validity, a presumption not to be overthrown except by clear and cogent evidence.'' Now, to be sure, that was dicta in the sense that the case itself involves a priority issue. But it was the holding of the Court three years later in Smith v. Hall. It was repeated on the very same day in Mumm. And it was the Court spent an entire page, I think page 7, the better part of page 7 and 8 of its opinion, explaining that enunciating a general principle of the law, and it would be a cruel joke on Congress to have said, when it said, ''We are codifying the existing presumption,'' that that presumption was not exactly what the Supreme Court unanimously had said, which is a presumption not to be overthrown by clear and convincing evidence. Now, that's what's meant — it's not that the first sentence uses the word ''presumption.'' It uses the word, essentially, ''presumption of patent validity,'' which is a feature — a uniform feature of the Supreme Court's jurisprudence since the Court first started addressing this issue in 1873 and, indeed, when Justice Story first decided the Washburn v. Gould case. There is — their argument is the standard is a preponderance. There is not one opinion, there is not one sentence, there is not one phrase in any of this Court's line of decisions that supports that proposition. And when Judge Ritsch said in 19 — shortly after 1952 that there was some disarray in the Court's opinions, he was — and you can look at his opinion in context — he was talking about lower court decisions that had either ignored or misinterpreted this Court's very clear holdings. Holdings, which, by the way, refute not only their argument for a universal standard, preponderance standard, but directly refute their argument that there somehow is some other standard of proof that applies with respect to evidence that assertedly was not before the patent office, that was true of most of this Court's cases, that was true of most of the cases that were after RCA. Ginsburg. Mr. Washburn, would you agree, looking to Judge Ritsch's opinion, that it would have been in order for the judge to instruct, if the judge had been asked to do so, that the evidence would carry more weight if it hadn't been presented? Because the defendant's evidence would carry more weight if it hadn't been presented to the patent office. Waxman. Yes, and the Federal Circuit has said that over and over and over again. I mean, I'm going to quibble with the word »would« because I think the actual language of the instruction can't invade the province of the jury. But you could certainly could say that the defendant contends that the patent is invalid because the law presumes that a patent issued by the PTO is valid, the defendant bears the burden of proving invalidity by clear and convincing evidence, and in deciding whether the defendant has met that burden, you may find it more easily met with evidence that you conclude the patent office did not consider in evaluating patentability. That is the longstanding established rule of the Federal Circuit. It was stated, as was recognized, in American Hoist in 1984, and the explanation for it, Judge Risch's explanation, is exactly the same insight that this Court's statement in KSR is, which is that there are reasons independent of deference to a particular PTO decision that warrant a clear and convincing evidence standard. And, and this is key, there is no case from this Court, to my knowledge, in Anglo-American jurisprudence, that creates or sanctions a regime in which there are different standards of proof with respect to a particular issue that a jury has to decide. The question, when there is numismatic Well, there are cases in which the presumption disappears. Well, there are you referring to cases of this Court? Yes. Well, I mean, there are instances in which a presumption disappears and then the parties begin again with burden of persuasion, et cetera. Well, okay. I'm talking here about the argument here is about the standard of proof. That is, a jury has to be instructed. Is it beyond a reasonable doubt? Is it preponderance? Is it clear and convincing? I'm not aware of any instance in Anglo-American jurisprudence, and certainly Microsoft and its amici have not cited one, in which the jury is told that depending on the weight you ascribe to the evidence you heard, you should apply a different standard of proof. The issue goes to the weight of the evidence. I mean, imagine a case in a regime in which you said, well, you've heard eyewitness testimony. If you, ladies and gentlemen of the jury, find that the eyewitness really had an unimpeded view, the standard is preponderance. But if you think that the view was impeded or obscured, the standard is clear and convincing evidence. The assertion that there was evidence that the jury, that the PTO didn't hear, and as the briefs point out, it is far from black and white what the PTO does or doesn't consider. And in addition, it's far from clear whether the unconsidered evidence is, quote, more pertinent than evidence that was considered. Even assuming that, the jury is told, for reasons of first principles that I will articulate in a moment, if left to my own devices, that the burden of proof is clear and convincing evidence, but you may find that burden more easily met if you find that there was, in fact, evidence relating to validity that was not, in fact, considered by the PTO when it issued this property right. Now, the first thing you can do is say, well, I don't know, I don't know, I don't  In fact, it's not clear and convincing evidence if you phrase it that way that it's something less than that. Well, I mean, a lot of the amici here have suggested alternatives to that language. I mean, there are, there are any number of formulations that trial courts have given. I think the one that would be clearest would be one that says, in deciding whether the defendant has met his burden, you may give added weight to evidence that you find that the PTO didn't consider in deciding validity. The case I think you're referring to was Microsoft's earlier case involving Z-4, where, unlike this case, Microsoft did ask for an instruction, but it was rejected by the court, it was rejected by the court and found not to be an abuse of discretion. The key point with respect to that instruction goes to the articulation that was suggested earlier, because in that case the instruction said, you may, I instruct you, I don't have it in front of me, but it was essentially a mandatory instruction to give greater weight or that the burden would be more easily met. Scalia, of course, the instruction that you propose to the jury, like your adversaries proposition, would require determining what it was that the Patent Office considered. So you haven't avoided the problem of litigating an issue that would better be avoided. You don't have to do it for your instruction just as he will have to do it for his. There is a great difference, Justice Scalia, between telling individual jurors what amount of weight they may or may not give to certain evidence and creating a dual standard of proof, which would, for reasons that Microsoft's own amici point out, requires the jury first to determine whether this evidence was or wasn't considered and was or wasn't more pertinent. Scalia, but your instruction requires that, too. And you're inviting the parties to litigate that issue so that the jury can be instructed. If you find that it wasn't considered, you can give it added weight. Waxman, and we reflect the research, I believe, on footnote 12 of our brief, this point is argued in many, many, many cases, and it was true in this case. Evidence is put on that the jury or that the PTO didn't consider this particular prior art, although, you know, in this case, the file wrapper shows that there were five prior art rejections based on other art before the patent was allowed, and counsel argue it to and fro to the jury. And as the Allison and Lemley article points out, the statistics bear out the common sense, which is that juries are, in fact, very influenced by the fact that there was art going to or questioning validity that was not considered by the PTO. In other words, the instruction, whether the instruction is necessary or not, juries get it and juries apply it. What they're not required to do is apply two different standards of proof following all sorts of predicate determinations that they would have to make. May I simply list the first? Ginsburg. But why not, Mr. Waxman, if the whole reason for this extra deference, for this clear and convincing standard, is that the patent office is expert and so we deferred the jury similarly should defer to their judgment, but if they haven't judged anything, what is the justification for continuing to have the clear and convincing standard? Here are four independent principles that justify the clear and convincing evidence standard across the board, regardless of what the jury considered. Number one, an infringer's validity challenge is a collateral attack on a government decision that has already been made, quite unlike Rogin and Huddleston, that bestows property rights by written instrument. Number two, the harm from an erroneous determination is hugely asymmetrical. A single holding of invalidity by a single lay jury vitiates for all time the patent and all of the reliance interests by the inventor and the investors and the licensees  Third, this grant of property rights not only induces reliance, which a lot like the land patent cases induce reliance, this is a grant of a property right that under the Constitution is specifically designed to induce reliance in exchange for the inventors honoring her half of the patent bargain, that is, public disclosure of her intellectual property for the public benefit, and the commitment of capital by investors and licensees that's necessary to bring into fruition for the public benefit. Kagan Isn't there a limited amount of reliance that any patent holder can have, given the re-exam system? Waxman Yes. And the fact that the yes, the re-exam system, I think your point actually — I wish I had thought to make this point myself — re-exam is often invoked by the patent holder. That is, because re-exam is done by the expert agency and allows the patent — allows the agency not to have a binary choice of yes, the patent's fine or no, it's invalid for all time, but can narrow the scope of the patent in re-exam, many re-exams are requested by the patent holder. And more — and also, when you request re-examination or when the PTO makes a re-exam decision, that decision is good for all time, whichever way it goes, unlike the stark asymmetry in trial court litigation where the patent holder has to win 100 percent of the time. If the patent holder loses once, the patent under non-mutual offensive collateral in Blondertongue, the patent is out. And I should point out that this Court's opinion in Blondertongue, which, of course, was a case of all-capital litigation. Breyer's principles are along the lines of how important patents are and what a disaster it is to the person once they're invalidated. Okay. I think the other side will say, in today's world where nobody really understands this technology very well, a worse disaster for the country is to have protection given to things that don't deserve it, because they act as a block on trade, they act as monopolies, and they will tie the country up in individual monopolies that will raise prices to consumers, et cetera. You can imagine my spelling out this argument. So I can't work out in my own mind whether in today's world these first principles cut for the patentee or cut for the challenger to the patent. Those are policy arguments that have been used in the past. And the first are not? Excuse me? No. The fact that it's a collateral challenge on a government decision bestowing property rights by written instrument, no. The fact that the harm from an erroneous decision is totally asymmetrical, no. The fact that what Congress intended was that this grant of property rights actually induce reliance, and finally, and this is my final first principle, I suppose, that changing this longstanding standard would marginalize the PTO, the expert agency that we know Congress created to superintend the issuance and reexamination of patents, and to the extent that there are significant policy concerns, which I agree with, may I finish my sentence? Finish your sentence. Which I agree with, A, Congress is on the job, and B, there is those policy reasons that have been used in the past, and C, Congress is on the job, and D, Congress is on the job, and I can say nothing about what Congress thought about the patent office in 1952 when it applied this Court's unanimous presumption. Thank you. Thank you, Mr. Waxman. Mr. Stewart, we'll hear from you now. Justice Scalia, and may it please the Court, I'd like to begin by addressing briefly this Court's decision in RCA, because I think it's important to notice not only that Justice Cardozo used fulsome and extensive language that was intended to sweep broadly and that was intended to announce a categorical rule. The other thing is the discussion in RCA was intended and was set forward as a recapitulation of prior doctrine. That is, Justice Scalia — Justice Cardozo did not purport to announce for the first time a rule as to the weight that should be given a prior patenting decision. He explained that this is what the Court had done since the latter part of the 19th century, and, in fact, it had been done by Justice Storywriting Circuit in the early part of the 19th century. And the Court in RCA said a patent is presumed to be valid until the presumption has been overcome by convincing evidence of error. The requirement of heightened proof was part and parcel of the presumption itself in the same way that I think most lawyers in this country would say that the requirement of proof beyond a reasonable doubt is part and parcel of the presumption of innocence in criminal cases. If a new criminal statute were enacted saying that the defendant is presumed innocent, but the presumption can be overcome by a preponderance of the evidence, that might be a presumption of innocence, but it wouldn't be the presumption of innocence as it's historically been understood in our country. The second thing I would say about Congress's presumed intent when it acted in 1952 is that at least when this Court's precedents are clear, Congress, when it uses words that come right from those cases, should be presumed to have codified this Court's holdings, not the decisions of lower courts that may have deviated from this Court's instructions. And I think the presumption that Congress acts against the background of existing law, it's less a prediction or an assessment of what percentage of the legislature were actually aware of the details of RCA. It's more a method of making the system work by telling conscientious legislators, if you do read up, if you do understand the contours of Supreme Court's decisions, you can be confident that your words will be. Sotomayor, the problem with your argument, assuming its validity, is why do you need the second sentence? If Congress was intending to sweep up in the use of the word presumption the need to overturn it by clear and convincing evidence, why did you need the second sentence saying that the other side now bore the burden of persuasion? I think there is a belt-and-suspenders quality to the statute, no matter how you parse it. But I think that Microsoft has essentially the same problem, because they have constructed a theory under which the second sentence does something that the first has not, does not. But they haven't constructed any theory as to why the first sentence is not superfluous. That is, given the second sentence to the effect that the burden of establishing invalidity is on the challenger, there is no more work to be done by the first sentence. The other thing I would say in response to Justice Alito's question, which also goes to the natural meaning of the statute, Justice Alito asked, I think basically, if these precedents were not on the book and we were just looking fresh at the language, what would we assume the standard to be? And I think we would say, let's look at what the defendant is asking the judge or jury to do. The defendant is asking the judge or jury to set aside a decision that has made by then the patent office, now the PTO. And we would ask, what sort of standard of proof ordinarily applies when a litigant asks a court to set aside an administrative decision? In a sense, this Court had a variant of that problem a few years ago in Dickinson v. Zirko, which dealt with direct court of appeals review of a denial by the PTO of a patent applicant's application. And the statute clearly authorized judicial review in the Federal Circuit, but said nothing about what standard would apply. And the Court said, in the absence of a conflicting standard imposed by the statute, we will look to background principles of administrative law and the standard will be substantial evidence. And that's basically what this Court said back in 1894 in Morgan v. Daniels. It said the reason that we apply a heightened standard when an individual attacks the validity of an issued patent is that that litigant is asking the court to set aside a decision made by the appropriate executive branch agency. But that ground doesn't carry very much weight when the matter was never considered by the PTO. I think you are correct that if Congress had focused specifically on the category of cases in which the only evidence brought forward to show invalidity had not been considered by the PTO, it might have addressed that separately. In our view, there are three independent reasons that it makes sense to apply a heightened standard even in that category of cases. The first two have to do with the interests of the patent applicant. The third has to do with the interests of the PTO. The first one is that the patent, the grant of a patent has historically been understood to reflect a quid pro quo between the applicant and the government. And the applicant's part of the bargain was disclose that which might otherwise be maintained as a trade secret. And the government's part of the bargain was give a period of exclusivity. And there is a threat in this Court's cases, especially in the barbed wire patent cases, to the effect that once the patent applicant has honored its part of the bargain, a court should be hesitant to essentially deprive him of the benefit for which he contracted, unless the evidence is clear. The Court in the barbed wire patent cases said that whatever doubts there may be as to whether the patentee was actually the first inventor should be resolved in the patentee's favor, because without question, he was the one who first disclosed the information to the public, made it available to the public through the patent application process itself. The second is related to the patentee's reliance interests, but is more instrumental. That is, independent of our concerns for fairness to the patent applicant, Congress could reasonably determine that there are enough uncertainties along the way to getting a patent, to having it overturned on various other grounds, that in an invalidity suit, the patent, the patentee should have reasonable confidence that it won't be overturned unless the evidence is clear. And I'd like to respond briefly to Your Honor's question, Justice Kagan, about why isn't that diminished by the reexamination process? I think it is diminished somewhat. Reexamination is different both because it's done by the expert agency and because it's more nuanced. There is the option to narrow the claims, to revise the language. It's not a blunderbuss tool like setting it aside. But I would still acknowledge the force of your observation that to some extent the patent holder's confidence would be greater if there were no reexamination process at all. And I guess I would say this is just one aspect of the patent law's balancing of competing interests in a way that doesn't serve either to the exclusion of the other. And to use an obvious analogy, the current term of patent protection is 20 years from the date of the application. Obviously, Congress thought 20 years was better than 10, and presumably that was because 20 years gives greater incentive to innovation. If somebody asked me why is reexamination sufficient to answer the concerns that Justice Breyer mentioned when reexamination can't consider certain issues and a case such as this doesn't necessarily have to be stayed while reexamination takes place? It's not fully sufficient to resolve all challenges to the validity of an issued patent. Now, Congress now has before it legislative proposals, one of which has passed the Senate, one of which has been voted out of committee in the House and is currently pending before the court, the full House of Representatives, that would expand the availability of post what they now call post-grant review proceedings, where for a limited window of time after a patent is issued, people who oppose the issuance of the patent can come in and object on any ground, and that wouldn't be limited to the grounds that are specified in the current reexamination proceeding. So this would expand the availability of post-grant review proceedings, and it reflects Congress's understanding that there is a problem with patents that should not have been issued, but its desire to create additional mechanisms for the PTO to address that problem rather than to have it be done through litigation. But the point I was going to make about the 20 and the 10 years is somebody could ask, well, if 20 years is better than 10, why wouldn't 30 be better than 20? And the only answer is, 30 presumably would give the patentee even more in — or the potential patentee even more incentive to invent, but at a certain point Congress decides that countervailing considerations require an end, and it's essentially done something of the same thing with reexamination. It said we're not going to go so far in the direction of protecting patent holders' reliance interests as to preclude the PTO from reassessing what it's done, but that doesn't mean that reliance interests aren't important. And the third thing I would say is that even when a defendant in an infringement suit comes forward with prior art that was not itself considered by the PTO, there's always the possibility that that prior art will be substantively equivalent to prior art that the PTO did consider. And so in cases like this, inform the defendant would be asking the jury to make a determination that the PTO had never made, but in substance what the defendant would be asking the jury to do is conclude that what the PTO thought was a patentable advance really was not so. Thank you. Thank you, Mr. Stewart. Mr. Hungar, you have 8 minutes for rebuttal. Thank you, Justice Scalia. A few points that I'd like to make. First of all, with respect to the suggestion that the jury should be instructed on the weight to be given various forms of evidence, I note that in the Z-4 case that's been discussed, the Federal Circuit rejected the very, quote, more easily carried, close quote, instruction that I-4-I suggests as the solution, and it did so because it would confuse the jury about what the standard is. Having effectively three standards of proof in patent cases rather than two is hardly a solution to the problem. But more fundamentally, however instructions might or might not be appropriate regarding the particular evidence before the jury, there has to be a justification for departing from the default preponderance standard, and no sufficient justification has been offered. The statute doesn't provide for it. The legislative history doesn't reference it. The pre-1952 case law can't reasonably be read in that way. The I-4-I and its amici do not point to a single case in the years leading up to 1952, the 15 or so years prior, where a court of appeals or any court or any commentator said that the rule is clear and convincing evidence across the board. No one understood that to be the rule. No one read RCA that way. Congress would not have done so either. So you can't get there under codification. You certainly can't get there under principles of administrative deference. Even the government admits that those principles don't justify a heightened  Breyer, what about the rule where, I'm trying this on, I don't buy it necessarily. The heightened standard exists where the Patent Office did consider it or could have considered it had the infringer asked for reconsideration. In other words, put the burden on the infringing party to use this procedure. And if he does use it, it's going to get a heightened burden, and if he loses. And if he doesn't use it, it should get a heightened burden, because he should have used it. Well, first of all, Your Honor, I don't see any way you can get that out of the statute. But it also wouldn't work, because re-exam takes place. The statute itself doesn't. We're all going with history here, I mean, and history brought up to date because the words in the statute. I don't think cover it either way. They talk about presumption. Put that to the side. I wanted your opinion on that as the validity or a useful instruction for juries. Well, Congress certainly couldn't have intended that in 1952 because it hadn't yet created re-exam. I'm not asking that question. I'm asking the question of whether, in your experience as a patent lawyer, or would we're trying to do is we're trying to get a better tool, if possible, to separate the sheep from the goats. That's what we're after, I think. And so what is that, a better tool? Your Honor, as you know, re-exam is not available for many of the types of invalidity issues that arise. But in any event, if the Court had such rule, the problem is re-exam takes a long time. Patent plaintiffs generally oppose stays of litigation for re-examination because they want to get to the jury because they know that juries are much more likely to uphold patents than either judges or the patent office on re-exam. So they want to get the case litigated as quickly as possible so that you get through the court system before the re-exam has been completed. So to the — in fact, if it were true, as some of the amici argue, that patent applicant — patent holders are afraid of juries and want the experts at PTO to resolve the questions, which we don't think as a factual matter is accurate, but if that were true, the patent applicant — the patent holder has the absolute right to initiate re-exam themselves. And they could certainly go to the Court and say, please, stay proceedings pending re-examination. Normally, when courts refuse to stay proceedings, it's because they don't want to prejudice the plaintiff who's opposing a stay. But if the plaintiff is asking for a stay, there's not going to be any problem. So the system already permits patent holders to follow that procedure and get re-examination if they want it. The problem is they usually don't. And, in fact, a preponderance standard would encourage that. With respect to the reliance arguments, the re-examination problem, we think, addresses that. The fact that this is a procedural rule under this Court's precedence makes clear that reliance interests are lessened in any event, the reliance interests aren't nearly as strong as the same arguments made by many of the same parties in KSR and Metamune and eBay where this Court was not persuaded. It should not be persuaded here either. With respect to the legislative history that they rely on, if you're going to look at the legislative history, what it actually says is that Congress is referring to the presumption as stated by the courts, plural, not the Supreme Court, courts, plural.  So Congress was not looking only at the RCA case, which is not even referenced in the legislative history, but was looking at the rule as it was understood to exist in 1952, which is not the rule that I4I urges. With respect to the presumption point, the presumption clearly does serve a purpose, the presumption language in the statute, by overturning the Court's prior to 1952 decisions that had rejected the presumption and by making clear that the burden of going forward is on the defendant, so the plaintiff doesn't have the burden that it would otherwise have of pleading and putting forward evidence at trial of validity. For all these reasons, we ask that the judgment of the court of appeals be reversed. Thank you, Mr. Hungar. The case is submitted.